UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT ROBERT WILLIAMS,

    *Plaintiff*,

*v.*                                      CASE NO. 12-CV-11044

COMMISSIONER OF              DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 13.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff Vincent Williams was 21 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 38, 164.) Plaintiff has no employment history. Plaintiff filed the instant claim on May 7, 2009, alleging that he became unable to work on November 14, 1989, his date of birth. (Tr. at 164.) The claim was denied at the initial administrative stages. (Tr. at 99.) In denying Plaintiff's claims, the Commissioner considered organic mental disorders and disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*) On February 15, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Shirley Moscow Michaelson, who considered the application for benefits *de novo*. (Tr. at 19-35; 38-98.) In a decision dated March 4, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 32.) Plaintiff requested a review of this decision on April 18, 2011. (Tr. at 17-18.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 4, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On March 8, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner

has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes

that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

5

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 30, 2009, the application date. (Tr. at 24.) At step two, the ALJ found that Plaintiff's borderline intellectual functioning was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 26-27.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 31.) The ALJ also found that on the date the application was filed Plaintiff was a younger individual, i.e., between the ages of 18 and 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform "simple, repetitive unskilled tasks that can [be] learned by demonstration only and involves no more than occasional contact with others." (Tr. at 27-31.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 32.)

**E.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought chiropractic care for back pain on January 5, 2000. (Tr. at 317-23.) It appears that only an initial consultation occurred.

Plaintiff received special education services while in high school, i.e., while in tenth grade, which was the last year he completed. (Tr. at 207-22.) On March 21, 2007, when Plaintiff was 17 years old, it was noted that Plaintiff's Full Scale IQ was 70, Verbal IQ was 71, and Performance IQ was 74, which placed him in the "[m]ildly impaired range of ability[.]" (Tr. at 210.)

Plaintiff sought treatment at the hospital on August 17, 2009, for low back pain. (Tr. at 346-52.) Plaintiff received a steroid injection and was discharged. (Tr. at 352.)

On September 3, 2009, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Atul Shah, M.D. (Tr. at 229-36.) Dr. Shah diagnosed "[c]hronic lumbar myositis - rule out degenerative joint disease versus disc disease" and "[l]earning disorder by history." (Tr. at 230.) Dr. Shah noted that Plaintiff's gait was normal but that he had "mild limitation to the range of motion of the LS spine." (Tr. at 230.) In addition, Dr. Shah noted that

6

Plaintiff's "[p]ower is 5/5 overall." (*Id.*) Dr. Shah concluded that Plaintiff had "mild functional impairment for occupational activities due to lower back pain" but that "[h]e should be able to perform occupational activities." (*Id.*)

On September 3, 2009, Plaintiff was examined at the request of DDS by Nick Boneff, Ph.D. (Tr. at 237-40.) Dr. Boneff diagnosed "[l]earning [d]isorder, mild" and "[c]annabis abuse in partial remission[,]" assessed a GAF score of 60, and gave a "fair" prognosis. (Tr. at 239.)

A Psychiatric Review Technique was completed on September 27, 2009, by Joelle J. Larsen, Ph.D. (Tr. at 241-54.) Dr. Larsen diagnosed organic mental disorders and substance addiction disorders, i.e. learning disorder and cannabis abuse in partial remission. (Tr. at 241, 242, 249.) Dr. Larsen concluded that Plaintiff was moderately limited in activities of daily living and maintaining concentration, persistence or pace, and was mildly limited in maintaining social functioning. (Tr. at 251.) Dr. Larsen also stated that Plaintiff was

> not evidencing any significant cognitive impairment that would prevent him from understanding basic written and verbal instructions and directions and doing simple routine type tasks. Short and remote memory are intact and he is no[t] evidencing any depression, anxiety or disturbance of thought . . . . He is not, however, severely functionally limited from performing simple, unskilled work in a setting that is not highly competitive.

(Tr. at 253.)

A Mental Residual Functional Capacity ("RFC") Assessment was completed by Dr. Larsen on September 27, 2009, as well. (Tr. at 255-58.) Dr. Larsen concluded that Plaintiff was markedly limited in his ability to understand and remember and carry out detailed instructions, moderately limited in his ability to maintain attention and concentration for extended periods, but was not significantly limited in understanding and memory or sustained concentration and persistence. (Tr. at 255-56.) Dr. Larsen also found that Plaintiff was moderately limited in all areas of adaptation except the ability to be aware of normal hazards and take appropriate precautions and was not limited in any areas of social interaction. (Tr. at 256.)

A Physical RFC Assessment was completed by William Joh, M.D., on October 1, 2009. (Tr. at 259-66.) Dr. Joh found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds,

7

stand or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in his ability to push or pull. (Tr. at 260.) Dr. Joh also found that Plaintiff could frequently balance and crouch but should only occasionally be required to perform other postural tasks; there were no manipulative, visual, communicative or environmental limitations established. (Tr. at 261-63.) Dr. Joh noted that his findings were in accord with the Medical Source Statement given by Dr. Shah. (Tr. at 265.)

Plaintiff sought treatment in the hospital for back pain on November 23, 2009, where he received another steroid injection and was discharged. (Tr. at 362-66.)

In December 2009, Plaintiff sought treatment for depression and anxiety with James Zelch, M.D. (Tr. at 278-79.) Plaintiff was prescribed Zoloft. (Tr. at 279.) In February 2010, Dr. Zelch was informed that Plaintiff was participating in out-patient therapy at Oakland Psychiatric Center and that his diagnosis was Oppositional Defiant Disorder. (Tr. at 284.)

On October 30, 2010, Plaintiff sought treatment after he rolled a four-wheeler over on top of himself. (Tr. at 326.) A CT scan of Plaintiff's chest was performed due to complaints of chest pain. The result was negative, and a CT scan of the head or brain, which was performed due to left-sided headache after the accident, was normal. (Tr. at 330.) A CT scan of Plaintiff's cervical spine, based on complaints of neck pain, was also negative. (Tr. at 331.) X-rays of Plaintiff's shoulders were also normal. (Tr. at 332.)

Plaintiff indicated on his Adult Function Report that, on a typical day, he will "go out and look for work[,] bring home applications[,] try to fill them out, take them back, eat, clean the apartment kitchen, watch tv, [and] shower 1 or 2 times a day." (Tr. at 183.) Plaintiff indicated that he has no problems with personal care, does not need reminders, does household chores for about an hour once or twice a day, goes outside two or three times a day, walks for a mile, shops in stores for "2 or 3 hours[,]" watches television, plays video games, and visits with people on the phone and in person a "couple times a day[.]" (Tr. at 184-88.)

At the administrative hearing, Plaintiff testified that he recently worked as a janitor at Acument, a company that "built nuts and bolts and screws." (Tr. at 42-43.) While there, the

employer trained him on how to operate a Hilo. Plaintiff stated that he attained the "Hilo license but then, you know, I lost the job like right as soon as I got it [the license]." (Tr. at 43.) Plaintiff indicated he was fired "because I wasn't working hard enough, I guess." (*Id.*) Plaintiff added that although an oil spot he cleaned "looked clear [], it had like a filmy, slickness to the floor and the Hilo spun out and hit a rack that was holding the front jet engines for the machines that build the parts, and it almost caused a really bad accident. Somebody almost got hurt really bad." (*Id.*)

Plaintiff testified that he lives with his mother and her boyfriend and that he keeps his room clean, does laundry, and helps with the house cleaning. (Tr. at 46-47.)

Plaintiff testified that, at the time of the hearing, he was not receiving any treatment for his back pain. (Tr. at 49.) Plaintiff also testified that at the time of hearing he was not taking any prescription medication. (Tr. at 54.)

Plaintiff testified that he was incarcerated in 2010 for approximately 75 days for possession of marijuana and a probation violation. (Tr. at 57-58.) While in jail, Plaintiff worked in the kitchen making sandwiches for a full shift for about 65 of the 75 days. (Tr. at 58-59.)

Plaintiff stated that his back is "thrown out" easily but when asked whether that ever occurred while he was working as a janitor, Plaintiff stated that it did not. (Tr. at 49-50.) Plaintiff indicated that two weeks prior to the hearing while taking the trash out, he threw his back out, which lasted almost two days. (Tr. at 50.) Plaintiff testified that he generally stays away from people but has three close friends and together "we'll go to the pool hall and play pool [and] play some games together." (Tr. at 51.)

When asked how he got along with his supervisor when he was working, Plaintiff responded, "I didn't really get along with them too good. It was only a matter of time before they were going to fire me . . . I could tell - -." (Tr. at 52.) When asked how he responded to criticism from his supervisors, Plaintiff responded, "I got mad. I started raising my voice and yelling about it because I felt like I was being treated like a slave almost or something. I had the most probably unfair job in that place." (*Id.*) When the ALJ added that Plaintiff was getting paid to do the work, Plaintiff stated that he

9

> had to go inside of a header machine and clean all the oil sludge and metal shavings out of it and it was like, I couldn't even deal with it. That's really the main reason like I started getting frustrated with the job. . . . And then when I'd want a lunch break, I'd be too dirty too [sic] even eat. . . . I'd have sludge all over my face and, you know, metal shavings all over my clothes . . . .

(Tr. at 52-53.)

Plaintiff's counsel asked what Plaintiff considered to be heavy lifting that he would not be able to do and Plaintiff responded, "anything that's over a pound or two, you know, like five pounds. Anything over like five to ten pounds." (Tr. at 72.) When asked whether he lifted anything while working as a janitor, Plaintiff stated, "No, besides a little shovel of sludge, a little shovel of sludge and put it in a bucket," and that he did not have to carry the bucket because it had wheels and others helped. (Tr. at 73.) Plaintiff stated that he can lift a gallon of milk, which the ALJ told him weighs around 8 and a half pounds. (Tr. at 73-74.) Plaintiff responded affirmatively when his counsel indicated that Plaintiff's ability to lift depends on how he moves with it. (Tr. at 74.) When asked again by the ALJ how much he can lift, Plaintiff responded, "Ma'am, I can lift up to 300 pounds. Okay? But the point I'm trying to get across is that I can easily throw my back out." (Tr. at 74.) When asked about the times he has thrown his back out, Plaintiff mentioned a motorbike accident and taking out the trash, but stated, "I can't remember exactly what it was but I know I went [to the hospital] more than twice, probably about two or three times at least for my back. I know for an absolute fact. I just can't remember all of the exact reasons." (Tr. at 77-78.) Plaintiff stated that when he went to the hospital, he was given prescription medication, such as Valium, Flexeril and hydrocodone, and that these medications helped. (Tr. at 79.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who could perform "light work, simple repetitive tasks, demo only," and "[n]o more than . . . superficial or occasional contact with others." (Tr. at 64.) The VE responded that such a person could perform the light, unskilled jobs of laundry folder (3,900 jobs available in Michigan's lower peninsula), garment bagger (6,000), and cleaner-polisher (11,800). (Tr. at 64-66.) In response to a question from counsel, the VE indicated that if a person were off-task 20% of the time, "that would greatly eliminate a person's ability to maintain their

employment over an extended period of time." (Tr. at 70.) The ALJ inquired whether the jobs the VE mentioned had production requirements and the VE responded that the worker would have to maintain normal productivity to meet the employer's expectations but that the jobs are self-paced. (Tr. at 74-75.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ found that Plaintiff could perform "simple, repetitive unskilled tasks that can [be] learned by demonstration only and involves no more than occasional contact with others." (Tr. at 27-31.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ erred in finding that Plaintiff's back problems did not constitute a severe impairment (Doc. 8 at 10-12), that since Plaintiff's back problems constituted a severe impairment, the ALJ erred in concluding Plaintiff did not meet Listing 12.05C, (*id.* at 13-14), that even if Plaintiff's back problems did not constitute a severe impairment, the ALJ still erred in not considering them in assessing Plaintiff's RFC (*id.* at 14-15), and that the ALJ erred in forming a hypothetical posed to the VE that did not take into account Plaintiff's limitations as to concentration and attention. (*Id.* at 16-17.)

### a.     Severe Impairments

Plaintiff contends that the ALJ erred by failing to include Plaintiff's back problems in the list of severe impairments. (*Id*. at 10-12.) In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally groundless claims." *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Plaintiff's argument that the ALJ erred by not adding back problems to the list of severe impairments fails because once step two is "cleared" by a finding that some severe impairment exists, then the ALJ must consider a plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457. "The fact that some of [Plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* Consequently, I suggest that any alleged omission from the list of severe impairments does not undermine the ALJ's decision.

Plaintiff relatedly argues that even if Plaintiff's back problems did not constitute a severe impairment, the ALJ still erred in not considering them in assessing Listing 12.05 and Plaintiff's RFC. (Doc. 8 at 14-15.) In the instant case, the ALJ thoroughly considered Plaintiff's back issues and determined that they did not rise to the level of a severe impairment. (Tr. at 25-26.) The ALJ expressly stated that he considered "all symptoms" in completing the RFC analysis and expressly referred to and relied on his analysis of Plaintiff's back problems made under the Listing 12.05C analysis when considering Plaintiff's RFC. (Tr. at 27, 28.) "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs*, 901 F.3d 1306, 1310 (6th Cir. 1990) (citation omitted) (cited with approval in *Smith-Marker v. Astrue*, 839 F.

Supp. 2d 974, 983 (S.D. Ohio 2012)). In the instant case, since the ALJ expressly considered all of the impairments, both severe and non-severe, I suggest that the ALJ did not err.

    **b.**    **Listing 12.05C**

Plaintiff contends that his back problems constituted a severe impairment; thus, the ALJ erred in concluding that Plaintiff did not meet Listing 12.05C. (Doc. 8 at 13-14.) I suggest that substantial evidence supports the ALJ's finding that Plaintiff's back problems did not constitute a severe impairment and his finding that Listing 12.05C was not otherwise met.

The Sixth Circuit has held that in order to meet a Listed Impairment under 12.05, a plaintiff must satisfy the diagnostic description or definition as well as the severity requirements listed in subsections (A) through (D). 20 C.F.R. § 404.1520, Subpart P, App. 1, listing 12.05; *Foster v. Haller*, 279 F.3d 348, 354-55 (6th Cir. 2001).

To meet listing 12.05(C), a claimant must show that: (1) he experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., before the age of twenty-two); (2) he has a verbal, performance, or full scale IQ of 60 through 70; and (3) he suffers from a physical or other mental impairment imposing an additional and significant work-related limitation on function. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007). IQ scores alone are insufficient to satisfy Listing 12.05(C). *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 7 (6th Cir. 2004) ("two IQ scores of 70, without more, does not satisfy the requirements of listing 12.05(C)").

    **i.**    **Adaptive Functioning**

As to adaptive functioning, I suggest that substantial evidence supports the finding that Plaintiff does not experience significantly subaverage general intellectual functioning with deficits in adaptive functioning. Although Dr. Larsen found that Plaintiff was moderately limited in all areas of adaptation except the ability to be aware of normal hazards and take appropriate precautions and was not limited in any areas of social interaction (Tr. at 256), Dr. Larsen also

found that Plaintiff was only mildly limited in social functioning and that Plaintiff was "not evidencing any significant cognitive impairment that would prevent him from understanding basic written and verbal instructions and directions and doing simple routine type tasks." (Tr. at 253.) Thus, Dr. Larsen concluded that Plaintiff "is not . . . severely functionally limited from performing simple, unskilled work in a setting that is not highly competitive." (Tr. at 253.)

I therefore suggest that substantial evidence supports the ALJ's finding that there was insufficient evidence of deficits in adaptive functioning or additional and significant work-related limitation on function necessary to meet or equal listing 12.05(C). *See Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 465 (6th Cir. 2007) (although the plaintiff provided evidence of IQ of 69, evidence that the plaintiff's activities of daily living were only mildly limited and that he was only moderately limited in maintaining concentration, persistence or pace supported ALJ's finding that the plaintiff did not meet Listing 12.05); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (affirming ALJ's conclusion that Plaintiff had not met Listing 12.05 where evidence of onset before age 22 was merely that the plaintiff had completed school through the ninth grade in exclusively special education classes, and where the plaintiff had worked as a clerk at a bank and a store).

  **ii. IQ Scores**

In the instant case, the only record evidence of IQ scores is found in the special education services documents where it is reported that Plaintiff had a Full Scale IQ of 70, Verbal IQ of 71, and Performance IQ of 74, which placed him in the "[m]ildly impaired range of ability[.]" (Tr. at 210.) Even assuming that the Full Scale IQ score of 70 could satisfy the IQ component of Listing 12.05C, I suggest that Plaintiff cannot satisfy the remaining requirements.

  **iii. Physical Impairment**

As to the physical impairment, i.e. back problems, I suggest that the ALJ's determination that this impairment did not impose an additional and significant work-related limitation on function is supported by the record. The only treatment Plaintiff sought for his back pain was one chiropractic visit in 2000 (Tr. at 317-23) and two visits to the hospital in August and November

of 2009. (Tr. at 362-66.) Plaintiff did not seek or require regular treatment for his back problems. Although Plaintiff was diagnosed with lumbar myositis, Dr. Shah noted that Plaintiff's gait was normal and that he had a "mild limitation to the range of motion of the LS spine." (Tr. at 230.) In addition, Dr. Shah noted that Plaintiff's "[p]ower is 5/5 overall." (*Id.*) Dr. Shah concluded that Plaintiff "has mild functional impairment for occupational activities due to lower back pain" but that "[h]e should be able to perform occupational activities." (*Id.*) Dr. Joh's RFC findings, upon which the ALJ relied, were in accord with Dr. Shah's findings. (Tr. at 259-66.) Furthermore, after a roll-over accident in October 2010, all tests, including a CT scan of Plaintiff's cervical spine, were negative. (Tr. at 331.) Finally, the physical RFC assessment and Dr. Joh's findings are in accord with one another and are inconsistent with a severe impairment. (Tr. at 260-63, 265.) There is simply no evidence of record that supports a finding of severe impairment based on back pain. I therefore suggest that the ALJ's findings are supported by substantial evidence.

    **c.**    **RFC Analysis**

Plaintiff argues that the ALJ erred in forming a hypothetical posed to the VE that did not take into account Plaintiff's moderate limitations as to concentration and attention. (Doc. 8 at 16-17.) This argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted). Looking at the record as a whole, I suggest that the ALJ's findings are supported by substantial evidence.

In the instant case, the ALJ found that Plaintiff could perform "simple, repetitive unskilled tasks that can [be] learned by demonstration only and involves no more than occasional contact with others." (Tr. at 27-31.) This level of capability is supported by Dr. Larsen's findings that

15

Plaintiff was "not evidencing any significant cognitive impairment that would prevent him from understanding basic written and verbal instructions and directions and doing simple routine type tasks," that his "[s]hort and remote memory are intact and he is no[t] evidencing any depression, anxiety or disturbance of thought," and that he is not "severely functionally limited from performing simple, unskilled work in a setting that is not highly competitive." (Tr. at 253.)

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to simple, repetitive unskilled work that can be learned by demonstration. *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (where physician finding moderate limitations in concentration, persistence and pace also concluded that the plaintiff is able to perform unskilled work, ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (although the plaintiff cited to moderate limitations noted in the assessment, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work).

In addition to Plaintiff's physical back pain, I note that Plaintiff's mental health treatment was also not regular and it consisted of, at most, prescription drug treatment. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F.

16

App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own testimony that he has no problems with personal care, does not need reminders, does household chores for about an hour once or twice a day, goes outside two or three times a day, walks for a mile, shops in stores for "2 or 3 hours[,]" watches television, plays video games, and visits with people on the phone and in person a "couple times a day[.]" (Tr. at 184-88.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                                            s/ Charles E Binder
                                                                                            CHARLES E. BINDER
Dated: January 22, 2013                                   United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 22, 2013                             By     s/Patricia T. Morris
                                                                         Law Clerk to Magistrate Judge Binder